**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SRP ENVIRONMENTAL CO.                    CIVIL ACTION NO. 23-1475

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

CLAREMONT PROPERTY CO.                   MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by Defendant Claremont Property Company ("Claremont"). See Record Document 154. Claremont seeks dismissal of Plaintiff SRP Environmental, LLC'S ("SRP") claims for damages in relation to a line of credit, a fixed-rate loan, and accrued interest. See id. SRP opposed the motion and Claremont replied. See Record Documents 187 and 190. For the reasons set forth below, Claremont's Motion for Partial Summary Judgment is **GRANTED**.

**FACTUAL BACKGROUND**

The facts of this case were set forth in detail in the Court's May 21, 2026 Memorandum Ruling (Record Document 330) and are incorporated herein by reference. The following facts are relevant to the instant motion.

In April 2021, SRP and Claremont entered into a Master Services Agreement ("MSA") pursuant to which SRP would provide certain industrial hygiene services on projects. The agreement set the prices and terms of SRP's services for any projects Claremont hired SRP to perform within a year from signing. See Record Document 56-1. The MSA did not list a total sum for SRP's services. See id. The agreement further provided that "late payments will accrue interest at the rate of 1 ½% per month." Id. at 1.

After Hurricane Ida, Claremont contracted with SRP to perform industrial hygiene services on three projects for the benefit of the property owners, who were Claremont's clients.  The three projects were the Lighthouse Condominiums, the Lake Condominiums, and the City Place Townhomes and the claims in this case arise out of SRP's work on these projects.  SRP began work on the projects in September 2021 and substantially completed its services in April 2022.  SRP alleges that it performed all of its obligations to Claremont under the MSA and provided all expected services in an expeditious and workmanlike manner.  SRP invoiced Claremont for its work, but Claremont only made partial payments to SRP for the services performed.  SRP was not paid the full invoice amounts and eventually filed this lawsuit in September 2023.

Claremont submits that SRP engaged in irregular and deceptive billing practices and/or performed unnecessary work on the three projects.  A mitigation invoice review and/or audit was conducted by the insurance companies for SRP's work on the Lighthouse and Lake Condos projects.  Claremont maintains that the audits identified numerous issues with SRP's invoices, resulting in a dispute between Claremont and SRP over payment of the invoices.

In its Amended Complaint, SRP alleges that it relied to its detriment on assertions from Claremont that payment for the outstanding invoices was forthcoming.  See Record Document 56 at ¶ 86.  SRP contends it was forced to take on a line of credit and pay interest on that credit to continue its operations.  See id.  According to SRP, it "would not have had to take out that line of credit but-for Claremont's failure to pay."  Id.  SRP further alleged:

2

SRP accrued approximately $41,070.45 in interests and fees on its total line of credit, and due to inflation, the interest rate of their line of credit increased from 4% to 6.75% in an approximately 6-month period.

To mitigate its damages, SRP was forced to convert its line of credit into a fixed rate loan at a 6% interest rate and for a loan origination fee of $7,842.60. As a result, SRP will have to pay approximately $184,240.72 in amortized interest over the life of the loan.

While the principal amount in SRP's line of credit was not solely based on the costs related to the LHCA, Lake Condos, and City Place projects, the LHCA, Lake Condos, and City Place project costs contributed to the interests and fees incurred by SRP, and these costs would have been eliminated or mitigated by the timely payment of the outstanding invoices or if Claremont had not materially misled SRP to SRP's detriment.

Id. at ¶¶ 87-89.

Claremont now seeks dismissal of SRP's line of credit, fixed-rate loan, and interest-based claims, arguing SRP has no evidence to support these claims. Claremont further submits that the MSA did not allow for any accrued or amortized interest for finance charges, lines of credit, and/or third-party loans obtained by SRP. Claremont points to the clear terms of the MSA, namely the provision limiting interest to 1.5% on late payments.

## LAW AND ANALYSIS

### I.    Summary Judgment Standard.

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party."  Deshotel v. Wal-Mart Louisiana, L.L.C., 850

F.3d 742, 745 (5th Cir. 2017); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. <u>See</u> <u>Tubacex, Inc. v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. <u>See id.</u> If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 323). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." <u>Id.</u>

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." <u>Looney Ricks Kiss Architects, Inc. v. Bryan</u>, 2014 WL 1092403, at *2 (W.D. La. 2014). Partial summary judgment is for narrowing and focusing the issues for trial. <u>See</u> <u>Calpetco 1981 v. Marshall Exploration, Inc.</u>, 989 F.2d 1408, 1415 (5th Cir. 1993).

## II.    Detrimental Reliance.

SRP's claims relating to the line of credit, fixed-rate loan, and accrued interest are based on detrimental reliance. Louisiana Civil Code Article 1967 provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the

> promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code Ann. art. 1967.    "Detrimental reliance, also known as equitable estoppel, prevents a party from taking a position contrary to his prior acts, admissions, representations, or silence." 19th Jud. Dist. Ct. Bldg. Comm'n v. Level 3 Commc'ns, LLC, 659 F. Supp. 2d 766, 773 (M.D. La. 2009), citing Garber v. Badon & Ranier, 981 So.2d 92, 105 (La.App. 3 Cir.2008).  The doctrine "is not favored by the law and all claims must be examined carefully and strictly."  Id.

Under Louisiana's detrimental reliance doctrine, "a party is permitted to recover economic harm whenever the defendant made a representation by word or conduct upon which the plaintiff justifiably relied and because of which plaintiff changed his position to his detriment." Gray v. State Farm Fire & Cas. Co., No. CV 23-1053, 2025 WL 1213860, at *6 (W.D. La. Apr. 25, 2025), citing Babkow v. Morris Bart, P.L.C., 98-0256 (La. App. 4 Cir. 12/16/98), 726 So. 2d 423, 427.  The elements for detrimental reliance are:  "(1) representation by conduct or word, (2) justifiable reliance in representation, and (3) change in position to detriment because of reliance."  Id.; see also Knippers v. Dr. W.W. Lambard, 620 So. 2d 1368, 1374 (La. App. 2 Cir. 1993).

## III.    Analysis.

Claremont argues SRP's claims relating to the line of credit, fixed-rate loan, and interest accrued on the line of credit/loan fail for multiple reasons. See Record Document 154.  The Court will focus on two of the arguments:  (1) SRP has not produced documents evidencing the line of credit exists and its terms, and (2) SRP has no evidence to support that it changed its position solely based on Claremont's promise to pay.  See id. at 1. Claremont maintains that SRP's discovery responses indicate that SRP took out the line

of credit and the loan because numerous other companies disputed SRP's invoices and withheld payment to SRP.  See id.

In opposing the instant motion, SRP argues there are genuine issues of material fact precluding summary judgment on its claim for damages relating to the line of credit, fixed-rate loan, and accrued interest.  See Record Document 187 at 3-4.  SRP also submits that Claremont's motion is premature because the issues presented in the motion are directly tied and depend upon the eventual determination of SRP's breach of contract claim and whether the MSA alone controls the relationship between the parties.  See id. at 4-5.

In its Amended Complaint, SRP stated that "the principal amount in [its] line of credit was not solely based on the costs related to the LHCA, Lake Condos, and City Place projects."  Record Document 56 at ¶ 89.  Additionally, in the Rule 30(b)(6) deposition of SRP, Keith Sampson ("Sampson"), the managing member of SRP, was asked the total amount owed to SRP by other entities that had not timely paid at the time SRP took out the line of credit.  See Record Document 154-4 at 5.   Sampson responded that he "would have to go back and look at the accounting records."  Id.  In its motion, Claremont represents to the Court that SRP has not – to date – provided those accounting records.  See Record Document 154-2 at 13.  In its Supplemental Answer to Interrogatory 7, SRP also admitted that since 2022, it had filed 14 lawsuits against other companies to seek recovery on unpaid invoices relating to various projects.  See Record Document 154-3 at 4-5.

In response to Claremont's motion, SRP submitted a copy of its documents regarding the line of credit it obtained from Community Bank of Louisiana.  See Record

Document 187-1 at 3-6. Sampson stated in his declaration that the line of credit was obtained following Keeley Megarity's ("Megarity"), Claremont's President, "unfulfilled promises of payment." Record Document 263 at 2. However, the Amortization Schedule and Transaction History Statement (Record Document 187-1 at 3-6) do nothing to demonstrate what portion, if any, of the line of credit and subsequent fixed-rate loan were incurred because of SRP's dispute with Claremont, as compared to its other lawsuits relating to open accounts.

In its Amended Complaint under the heading titled "Claremont Property Co.'s False and Misleading Representations Regarding Payment," SRP alleges that it made an amicable demand for payment on all outstanding amounts for the three projects on April 24, 2022. Record Document 56 at 14, ¶ 68. SRP then references Megarity's email response of April 27, 2022 as the promise to pay upon which it relied when taking out the line of credit and fixed-rate loan. See id. at ¶¶ 69-77. In the Amortization Schedule and Transaction History submitted by SRP, it appears the loan was active as early as March 18, 2022. See Record Document 187-1 at 5. Thus, if the loan was active prior to Megarity's email of April 27, 2022, then SRP cannot establish the third element of detrimental reliance, that is, a change in position to detriment because of reliance.

This motion turns on the application of the summary judgment standard. While Claremont is the movant on partial summary judgment, SRP will ultimately bear the burden of proof at trial on its detrimental reliance claim. Claremont has pointed out the absence of factual support for the third element of SRP's detrimental reliance claim. In light of its previous concession that the principal amount in its line of credit was not solely based on the three projects at issue in this case, SRP has not come forward with

7

competent summary judgment evidence to create a genuine dispute of material fact that it changed its position by taking out the line of credit based upon Claremont's word or conduct.  Thus, Claremont's Motion for Partial Summary Judgment as to SRP's line of credit, fixed-rate loan, and accrued interest claims is **GRANTED**.

## CONCLUSION

Based on the foregoing, the Court finds SRP has not come forward with competent summary judgment evidence to create a genuine dispute of material fact that it changed its position by taking out the line of credit based upon Claremont's word or conduct. Accordingly, SRP Claremont's Motion for Partial Summary Judgment (Record Document 154) seeking entry of partial summary judgment is **GRANTED** and SRP's line of credit, fixed-rate loan, and accrued interest claims are **DISMISSED**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 5th day of June, 2026.

_____

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT