**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SRP ENVIRONMENTAL CO.                    CIVIL ACTION NO. 23-1475

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

CLAREMONT PROPERTY CO.                   MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by Defendant Claremont Property Company ("Claremont").  Claremont seeks dismissal of Plaintiff SRP Environmental, LLC's ("SRP") claim under the Louisiana Unfair trade Practices Act ("LUTPA").  SRP opposed the motion and Claremont replied.  See Record Documents 186 and 192.  The Court also granted leave for SRP to file a sur-reply.  See Record Document 208. For the reasons set forth below, Claremont's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL BACKGROUND**

The facts of this case were set forth in detail in the Court's May 21, 2026 Memorandum Ruling (Record Document 330) and are incorporated herein by reference. The following facts are relevant to the instant motion.

In April 2021, SRP and Claremont entered into a Master Services Agreement ("MSA") pursuant to which SRP would provide certain industrial hygiene services on projects.  The agreement set the prices and terms of SRP's services for any projects Claremont hired SRP to perform within a year from signing.  See Record Document 56-1.  The MSA did not list a total sum for SRP's services.  See id.

After Hurricane Ida, Claremont contracted with SRP to perform industrial hygiene services on three projects for the benefit of the property owners, who were Claremont's clients.   The three projects were the Lighthouse Harbor Condominiums, the Lake Condominiums, and the City Place Townhomes and the claims in this case arise out of SRP's work on these projects.  There was a Work Authorization for each project:  Work Authorization between the owner of City Place Townhomes and Claremont signed on August 31, 2021 (Record Document 126-5), Work Authorization between the owner of the Lighthouse Harbor Condominiums and Claremont signed September 3, 2021 (Record Document 104-6), and Work Authorization between the owner of the Lake Condominiums and Claremont signed September 3, 2021 (Record Document 104-8).

SRP began work on the projects in September 2021 and substantially completed its services in April 2022.  SRP alleges that it performed all of its obligations to Claremont under the MSA and provided all expected services in an expeditious and workmanlike manner.  SRP invoiced Claremont for its work, but Claremont only made partial payments to SRP for the services performed.   SRP was not paid the full invoice amounts and eventually filed this lawsuit in September 2023.

Claremont submits that SRP engaged in irregular and deceptive billing practices and/or performed unnecessary work on the three projects.  A mitigation invoice review and/or audit was conducted by the insurance companies for SRP's work on the Lighthouse and Lake Condos projects.  Claremont maintains that the audits identified numerous issues with SRP's invoices, resulting in a dispute between Claremont and SRP over payment of the invoices.   Claremont also hired an expert, Micharl S. Eddings ("Eddings") of J.S. Held Consulting Firm.  Eddings opined that during the subject projects,

but unbeknownst to Claremont, SRP engaged in irregular and deceptive billing practices and/or performed unnecessary work. Claremont acknowledges that there is a dispute over payment of the SRP invoices and that the parties were not able to reach an agreement on a final settlement that would include SRP's release of the property owners from any further claims or liens by SRP.

SRP submits that Claremont has wrongfully withheld money it admits is due to SRP in an attempt to strong arm SRP into an agreement/global release to accept less money than SRP is owed. SRP further contends that Claremont acted as an unlicensed general contractor during the three projects at issue and improperly charged a service fee for its general contracting services, thereby collecting overhead and profit that it was not legally entitled to receive.

Claremont has now moved for partial summary judgment on SRP's LUTPA claim on the ground that such claim fails as a matter of law. SRP maintains genuine issues of material fact preclude summary judgment on its LUTPA claim.

## I.    Summary Judgment Standard.

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery.  See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).  Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden.  See id.  If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  Id. (citing Celotex, 477 U.S. at 323).  In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...."  Id.

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Looney Ricks Kiss Architects, Inc. v. Bryan, 2014 WL 1092403, at *2 (W.D. La. 2014).  Partial summary judgment is for narrowing and focusing the issues for trial.  See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

## II.     LUTPA.

The LUTPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  La. R.S. 51:1405.  LUTPA's goal is narrow, as it protects "against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business

4

competition." K&F Rest. Holdings, Ltd. v. Rouse, 798 F. App'x 808, 810-11 (5th Cir. 2020), citing Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., 144 So. 3d 1011, 1026 (La. 2014).  The Louisiana Supreme Court has explained:

> Because of the broad sweep of [§ 51:1405's] language, Louisiana courts determine what is a LUTPA violation on a case-by-case basis.  . . .  [A] plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.  [T]he range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.

Quality Envtl. Processes, Inc., 144 So. 3d at 1025 (citations and quotations omitted).

"The elements of a cause of action under LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor, or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss."  Pure Air Daigle, LLC v. Stagg, No. 6:16-CV-01322, 2017 WL 4158824, at *3 (W.D. La. Sept. 15, 2017).  LUTPA protection does not extend to mere negligent acts and the statute "does not provide an alternative remedy for breaches of contract."  Id.  Additionally, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions."  Id.  In LUTPA cases, "a defendant's motivation is a critical factor."  Pure Air Daigle, LLC v. Stagg, No. CV 6:16-1322, 2017 WL 11534244, at *13 (W.D. La. Jan. 11, 2017).  The actions at issue "must have been taken with the specific purpose of harming the competition."  Id.; see also Balthazar v. Hensley R. Lee Contracting, Inc., 2016-0920 (La. App. 4 Cir. 3/15/17), 214 So. 3d 1032, 1041, writ denied, 2017-0777 (La. 9/22/17), 228 So. 3d 741.  In other words, "[c]onduct does not violate LUTPA unless it is undertaken

with the specific intent to harm the competition."  Pure Air Daigle, LLC, 2017 WL 11534244, at *13.

Louisiana "jurisprudence has held that there is no LUTPA violation when the alleged conduct is simply the appropriate exercise of good business judgment and the proper workings of free enterprise."  Vermilion Hosp., Inc. v. Patout, 2005-82 (La. App. 3 Cir. 6/8/05), 906 So. 2d 688, 691-92, citing Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362, 1365 (La.App. 2 Cir.1988).  "Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious."  Id., citing Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir.1993).

## III.     Analysis.

SRP alleges that the following conduct by Claremont violates LUTPA:  (1) failure to remit monies owed, (2) charging a service fee for general contracting services, and (3) misrepresenting its licensure status.  Conversely, Claremont submits this is basic dispute between a contractor and subcontractor over payment of invoices for moisture mapping and related work done on three multi-unit residential buildings following hurricanes; thus, Claremont argues that SRP's claims do not rise to the level of LUTPA violation.

### A.     Failure to Remit Monies Owed

SRP's first argument relates to two payments received by Claremont from insurance companies or property owners on SRP invoices, but never paid to SRP.  On November 16, 2021, SRP emailed to Claremont an invoice totaling $292,509.75 for work it had completed on the Lighthouse Harbor Condominiums project ("the Lighthouse project").  See Record Document 186-2 at 2, ¶¶ 15-18.  On June 12, 2022, Michael

6

Coumanis ("Coumanis"), the Executive Director of Claremont, sent an invoice to Nancy Carpenter at AIG, the insurer for the Lighthouse project, based upon that invoice. See id. During his deposition, Keeley Megarity (Megarity"), the President of Claremont, stated that the insurance company would not pay the $292,509.75 amount. See Record Document 142-4 at 5-6. Coumanis and Megarity both testified that AIG paid $200,000 on the invoice. See Record Documents 186-3 at 3 and 186-4 at 3. During his deposition, Megarity explained:

> Q. Why hasn't that $200,000 been paid to SRP?
>
> A. . . . We said, Okay. Well, let's get a -- I think we even offered to pay in addition to the 200. I think we even offered in addition to supplement the payment. But we wanted to [get] some kind of global release to say, Let's be done with it. Let's get the Louisiana projects closed out and finished, behind us, and all of that.
>        [SRP] did not want any part of that. And at that point, when we just -- it started to go poorly. And then it continued to go worse.

Record Document 142-4 at 6. Megarity further testified that Claremont has been holding the $200,000 "for the last two years or three years" and the money is "earmarked" for SRP. Megarity stated that Claremont would be "happy to pay today if [SRP] wants to sign a global release. That's all we asked." Id. at 7. Claremont has also acknowledged another $118,000 in payment from the insurer of the Lake Condominiums for SRP's work on that project. See Record Document 170-1 at 18. It appears Claremont's reason for withholding this amount is identical to its reason for withholding the $200,000 payment.

In the context of LUTPA, SRP argues Claremont's failure to remit monies purportedly owed is more egregious than a regular breach of contract for non-payment. SRP seems to allege Claremont may have violated a criminal statute and again questions the testimony and credibility of Megarity. See Pure Air Daigle, LLC v. Stagg, 2017 WL

7

4158824, at *3 (LUTPA protection does not extend to mere negligent acts and the statute "does not provide an alternative remedy for breaches of contract."). Here, Claremont readily admits that it received partial payments for SRP's work from the respective property owners on account of the Work Authorizations related to the Lighthouse and the Lake Condominiums projects. But Claremont maintains it did not use the partial payments to pay for other projects or for its own gain. Instead, it submits that the partial payments were not remitted to SRP because there is an ongoing billing dispute and continuing disagreement about the terms of the contract/agreement between the parties and the accuracy of SRP's invoices.

Throughout its briefing on this issue, SRP repeatedly references Claremont's refusal to produce its accounting records. See Record Document 186 at 8. In its sur-reply, SRP states:

> Claremont filed its Reply and improperly attached a new evidentiary submission, the Declaration of Keeley Megarity ("Declaration"). Claremont relies on this Declaration to supply additional new factual assertions concerning alleged payment practices, billing disputes, and Claremont's intent and conduct but many of these statements are not supported by any documents whatsoever. Additionally, the very documents that might support these statements in the Declaration are the accounting documents that Claremont steadfastly refuses to produce even after this Court issued two orders compelling proper compliance (which now is the subject of a pending motion for sanctions against Claremont).

Record Document 208 at 2. On March 25, 2026, the Court granted the referenced motion for sanctions and ordered:

> Defendant is ordered to produce thumb drives or other storage devices loaded with its QuickBooks accounting records for the Projects at issue. This production must be made in a readily usable form and must be produced within 14 days of the entry of the joint protective order discussed herein. Defendant must produce all responsive QuickBooks accounting records, and it may not use at trial any QuickBooks accounting records for the Projects unless they are provided to Plaintiff as ordered.

8

Record Document 284. Now, currently pending before Magistrate Judge Hornsby is yet another Motion for Sanctions and/or Contempt filed by SRP on May 5, 2026, alleging Claremont has failed to properly comply with the Court's earlier order requiring it to produce certain accounting records, including its electronic QuickBooks accounting records for the three projects at issue. See Record Document 320.

At this stage, neither SRP nor the Court know exactly what Claremont did with the $318,000 it was paid from the insurance companies. In his declaration, Megarity stated that "Claremont has always had the sum of the partial payment for SRP invoices in its accounts, to be paid once a reasonable resolution is achieved." Record Document 192-1 at 1-2, ¶ 2. However, this statement cannot be corroborated because Claremont has refused to produce the accounting records concerning the use of the funds paid by the property owners or insurers. In the absence of the accounting records, any resolution of this portion of SRP's LUTPA claim would require the Court to weigh evidence and/or make a credibility determination. Moreover, the undersigned will not reward Claremont's refusal to comply with Magistrate Judge Hornsby's Order.

Genuine disputes of material fact remain such that this Court cannot resolve SRP's LUPTA claim relating to failure to remit monies owed at the summary judgment stage. It will be for the trier of fact to determine whether this claim is more than an alternative remedy for a breach of contract and/or whether Claremont's failure to pay the $318,000 to SRP was more than a mere negligent act that does not rise to the level of LUTPA protection.

**B.**     **General Contractor Fee**

SRP submits that Claremont, because it was unlicensed, acted fraudulently and deceptively by adding a 20% general contractor's ("GC") fee to SRP's invoices. The 20% GC fee was borne by the property owners and their insurers, not SRP. The GC fee was remitted to Claremont. Claremont did not charge SRP for overhead and profit.

SRP has not presented competent summary judgment evidence to create a genuine dispute of material fact regarding the 20% GC fee. Claremont is free to exercise business judgment and pursue a profit, even at the expense of competitors, so long as the means used are not egregious. See Vermilion Hosp., Inc., 906 So. 2d at 691-92. But here, the 20% GC fee was not at the expense of SRP, but rather was borne by the property owners and their insurers. Additionally, Claremont has presented the declaration of Megarity, who stated that the GC fee was a "generally accepted industry standard, practice, and/or custom." Record Document 126-1 at 11, ¶ 36. He further declared that "at all relevant times . . . , the property owners' insurance companies understood, accepted, and agreed to pay Claremont a 20% GC fee for the approved subcontractor services of SRP." Id. at 11, ¶ 37. He did note that "Claremont was not paid a 20% GC fee for SRP's subcontractor services/invoices that were flagged, disputed and rejected by the insurance companies." Id. at 11, ¶ 38.[1] The 20% GC fee in this matter was an appropriate free enterprise transaction by Claremont and SRP has presented no

---

[1] SRP argues that Court should not consider the self-serving testimony of Megarity. However, "self-serving evidence, including affidavits, may be considered competent summary judgment when the evidence otherwise meets the requirements of Rule 56(c)(4)." Brown v. City of Wisner, No. CV 3:22-00780, 2022 WL 17258341, at *9 (W.D. La. Nov. 10, 2022), report and recommendation adopted, No. 3:22-00780, 2022 WL 17254767 (W.D. La. Nov. 28, 2022), citing Guzman v. Allstate Assurance Co., 18 F.4th 157, 161 (5th Cir. 2021).

competent summary judgment evidence that such transaction was done with the specific intent to harm SRP.  See Pure Air Daigle, LLC v. Stagg, 2017 WL 4158824, at *3. Claremont is entitled to partial summary judgment on this issue.

### C.    Licensure Status

SRP argues that Claremont's misrepresentation of its licensure status was a violation of LUTPA because the misrepresentation was purportedly done to obtain an unjust advantage to SRP's detriment.  As noted previously, the Court must consider the motivation behind the actions alleged to have violated LUTPA.  Pure Air Daigle, LLC, 2017 WL 11534244, at *13; Balthazar, 214 So. 3d at 1041.  Here, the record is devoid of any evidence to support that Claremont misrepresented its licensure status with the specific intent to cause a loss, harm, or inconvenience to SRP or to obtain an unjust enrichment to the detriment of SRP.  See Pure Air Daigle, LLC, 2017 WL 11534244, at *13.  In fact, the Court believes Claremont's licensure status is not material to the payment disputes in this matter.  Claremont is entitled to partial summary judgment on this issue.

### CONCLUSION

Based on the foregoing, the Court finds partial summary judgment is appropriate as SRP's LUTPA claim relating to the 20% GC fee and Claremont's licensure status. Conversely, partial summary judgment is not proper as to SRP's LUPTA claim relating to Claremont withholding money it admits is due to SRP.  Claremont's Motion for Partial Summary Judgment (Record Document 159) is, therefore, **GRANTED IN PART AND DENIED IN PART**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

11

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 9th day of June, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT